

**United States Department of Agriculture**

Farm and Foreign Agricultural Services

Risk Management Agency

Beacon Facility
Mail Stop 0801
P.O. Box 419205
Kansas City,
MO 64141-6205

December 17, 2014

W. Kurt Henke
Elizabeth T. Bufkin
Henke-Bufkin, P.A.
P.O. Box 39
Clarksdale, MS 38614

William C. Bridgforth
David R. Bridgforth
Ramsay, Bridgforth, Robinson and Raley LLP
P.O. Box 8509
Pine Bluff, AR 71611

**Subject:** Request for Federal Crop Insurance Corporation (FCIC) Interpretation – Rice Special Provisions for the 2012 and succeeding crop years in Stoddard County, MO

**Requestors:** W. Kurt Henke, Henke-Bufkin, P.A.
Elizabeth T. Bufkin, Henke-Bufkin, P.A.
William C. Bridgforth, Ramsay, Bridgforth, Robinson and Raley LLP
David R. Bridgforth, Ramsay, Bridgforth, Robinson and Raley LLP

**Crop Year:** 2012
**Crop:** Rice

Dear Mr. Henke, Ms. Bufkin, Mr. W. Bridgforth, and Mr. D. Bridgforth:

Thank you for your October 7, 2014, letter requesting a written interpretation of the Rice Special Provisions for the 2012 and succeeding crop years in Stoddard County, MO. Your request was made pursuant to Risk Management Agency (RMA) Bulletin No. MGR-05-018 in accordance with section 20(a) of the Common Crop Insurance Basic Provisions.

Please refer to the attached enclosure for FCIC's interpretation.

Sincerely,

*Tim B. Witt*
Tim B. Witt
Deputy Administrator, Product Management

USDA is an Equal Opportunity Employer and Provider



EXHIBIT D

Enclosure
FCIC Interpretation of Procedures


CC:   RCIS
      Bell Family Partnership
      Topeka Regional Office

Enclosure
FCIC Interpretation of Procedures
RCIS & Bell Family Partnerships

### Risk Management Agency Interpretation of FCIC Procedure:

**Subject:** Request for interpretation of the Rice Special Provisions for the 2012 and succeeding crop years in Stoddard County, MO.

### Background

Rice Special Provisions for the 2012 crop year in Stoddard County, MO:

> Insurance Availability
> \*\*\*\*
>
> In addition to the definition of Planted Acreage specified in section 1 of the Crop Provisions, the following must have occurred immediately following seeding. If these activities have not occurred, the acreage will be considered "acreage seeded in any other manner" and will not be insurable:
>
> 1. levees are surveyed and constructed;
> 2. levee gates are installed and butted; and
> 3. the irrigation pump is operable, ready to be started in the event sufficient rainfall has not been received, and turned on to provide sufficient water for the purpose of germination or elimination of soil crusting.

### Interpretation Submitted by Requestor

Two interpretations were submitted in this joint Interpretation of Procedure request.

First Requestor's Interpretation:

The Special Provisions require, as a condition of insurability, that the insured must survey and construct levees in the rice fields, install and butt levee gates, and have an operational irrigation pump present for the rice acreage and that these steps must be completed by or immediately following the planting of the crop. The first requestor interprets this procedure to mean that a producer must, no later than immediately following the seeding of the fields, construct the entire levee system for all of the fields including preparation and installation of levee gates throughout all fields. The Special Provisions do not expressly state that the requirement for levee construction means construction of the entire levee system, but it is the first requestor's position that the existence of permanent perimeter levees does not satisfy the requirement for construction of levees and installation of levee gates so as to make the acreage insurable. Rather, for an insured to comply with the requirements of the Special Provisions, all levees and levee gates must be prepared and put into place immediately after the crop is planted.

Second Requestor's Interpretation:

It is the second requestor's interpretation that the Special Provisions only require that such levees, levee gates, and irrigation pumps as are required to enable the producer to put sufficient

3

Enclosure
FCIC Interpretation of Procedures
RCIS & Bell Family Partnerships

water on the field in the event it is needed for the purposes of germination or the elimination of soil crusting be in place immediately following seeding. The purpose of the Special Provisions statement was to enhance program integrity concerns by ensuring losses were not paid to producers that did not have the means to flush the acreage if necessary to obtain an adequate stand. The second requestor's interpretation is entirely consistent with the purpose of the Special Provisions as it requires all levees, levee gates, and irrigation pumps needed to flush the field if necessary be in place immediately following seeding. Under the second requestor's interpretation, interior levees that have no impact on the producer's ability to flush the field but rather are used to maintain the permanent flood at a consistent level throughout the field do not have to be installed immediately following planting in order for the acreage to be insurable. The timing for the installation of such interior levees and associated levee gates is governed by the requirement that the producer follow good farming practices.

### Risk Management Agency Determination

FCIC agrees with the first requestor's interpretation. FCIC does not agree with the second requestor's interpretation. Any time a term is not defined in the policy, its common meaning is used and that is found in any standard dictionary. The Merriam-Webster dictionary defines "immediately" as "without any delay." This means the listed activities must occur right after planting has ended, weather permitting, without any delay. If weather prevents these activities, they must commence as soon as the weather permits.

Therefore, FCIC does not agree with the second requestor's interpretation that the Special Provisions only require that such levees, levee gates, and irrigation pumps as are required to enable the producer to put sufficient water on the field in the event it is needed for purposes of germination or the elimination of soil crusting, be in place immediately following seeding. FCIC also does not agree that interior levees do not have to be installed immediately following planting in order for the acreage to be insurable.

The Special Provisions statement specifies what activities must occur immediately following seeding, including:

1. levees are surveyed and constructed;
2. levee gates are installed and butted; and
3. the irrigation pump is operable, ready to be started in the event sufficient rainfall has not been received, and turned on to provide sufficient water for the purpose of germination or elimination of soil crusting.

These are specific activities that must occur on the insurable acreage each year. These are not requirements that only need to occur if the situation arises that requires the irrigation. The requirement is to conduct these activities immediately after planting and are not governed by the requirement that the producer follow good farming practice. This is a condition of insurability, not an issue of whether the producer followed good farming practices.

4

Enclosure
FCIC Interpretation of Procedures
RCIS & Bell Family Partnerships

In accordance with section 20(a) of the Common Crop Insurance Basic Provisions, this FCIC interpretation is binding in any mediation or arbitration. Any appeal of this interpretation must be in accordance with 7 C.F.R. part 11.