UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BOTTOMS FARM PARTNERSHIP, | ) | |
| BELL FAMILY PARTNERSHIP, | ) | |
| BELL PLANTING CO., and | ) | |
| NEZ FARMS, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | No. 4:15-CV-1073-SPM |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF AGRICULTURE, | ) | |
| RISK MANAGEMENT AGENCY, and | ) | |
| FEDERAL CROP INSURANCE | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This is an action for judicial review of a final agency action under the Administrative
Procedure Act, 5 U.S.C. § 701, *et seq.* This case is before the Court on the cross-motions for
summary judgment filed by Plaintiffs (Doc. 35) and Defendants (Doc. 38). Both motions have
been fully briefed, and the Court has heard oral argument on them. The parties have consented to
the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C.
§ 636(c)(1). (Doc. 28). For the following reasons, Defendants' motion will be granted, and
Plaintiffs' motion will be denied.

**I.     FACTUAL BACKGROUND**

Plaintiffs in this case are four entities that conduct farming operations in Missouri: Bottoms
Farm Partnership, Bell Family Partnership, Bell Planting Co., and Nez Farms, Inc. (collectively,

"Plaintiffs"). Defendants in this case are the United States Department of Agriculture ("USDA"), the Risk Management Agency ("RMA"), and the Federal Crop Insurance Corporation ("FCIC") (collectively, "Defendants"). In their Complaint, Plaintiffs seek a declaratory judgment and injunctive relief arising from administrative determinations issued by FCIC and RMA.

The Federal Crop Insurance Act ("FCIA") was enacted "to promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance and providing the means for the research and experience helpful in devising and establishing such insurance." 7 U.S.C. § 1502(a). Defendant FCIC is a federal government-owned corporation within the USDA that was created to "carry out the purposes" of the FCIA. 7 U.S.C. § 1503; 31 U.S.C. § 9101(3). Defendant RMA is an agency of the USDA and is charged with supervision of FCIC and with regulation and oversight of the FCIA. 7 U.S.C. § 6933.

Pursuant to the FCIA, FCIC is authorized to act as a reinsurer to Approved Insurance Providers ("AIPs"). 7 U.S.C. § 1508. An AIP is "a private insurance provider that has been approved by [FCIC] to provide insurance coverage to producers participating in the Federal crop insurance program established under this subchapter." 7 U.S.C. § 1502(b)(2). "In order to qualify for reinsurance through the FCIC, the policies written by [AIPs] must comply with the FCIA and its accompanying regulations." *Davis v. Producers Agric. Ins. Co.*, 762 F.3d 1276, 1284 (11th Cir. 2014). "Consequently, the FCIA generally establishes the terms and conditions of insurance, . . . even though the crop insurance policy is between the farmer and an [AIP]." *Id.* (internal quotation marks omitted).

During the time periods relevant to this litigation, Plaintiffs conducted farming operations, including rice production, in Stoddard County, Missouri. In 2012, each of the Plaintiffs purchased federally reinsured policies of Multi-Peril Crop Insurance that provided revenue protection

coverage for their 2012 rice crop from Rural Community Insurance Services ("RCIS"), an AIP. As an AIP, RCIS entered into a Standard Reinsurance Agreement with FCIC.

The policies issued to each Plaintiff, like other policies issued under the Federal crop insurance program, include three sets of provisions: (1) the Common Crop Insurance Policy Basic Provisions (the "Basic Provisions"), which are common to all crops and are codified in the Code of Federal Regulations at 7 C.F.R. § 457.8 (2012); (2) the Rice Crop Provisions, which are specific to the particular crop that is being insured and that are codified in at 7 C.F.R. § 457.141 (2012); and (3) the "Special Provisions of Insurance 2012 and Succeeding Crop Years for Stoddard County, Missouri—Rice ("Special Provisions")," which govern rice grown in Stoddard County, Missouri and are not codified in the Code of Federal Regulations.

At issue in this case is the following provision, contained in the Special Provisions:

**Insurance Availability**
. . .
In addition to the definition of Planted Acreage specified in section 1 of the Crop Provisions, the following must have occurred immediately following seeding. If these activities have not occurred, the acreage will be considered "acreage seeded in any other manner" and will not be insurable:
1. levees are surveyed and constructed;
2. levee gates are installed and butted; and
3. the irrigation pump is operable, ready to be started in the event sufficient rainfall has not been received, and turned on to provide sufficient water for the purposes of germination or elimination of soil crusting.

(Administrative Record 59).

As a result of substantial damage to their rice crop in 2012, each of the Plaintiffs filed claims with RCIS for the 2012 crop year. RCIS denied the Plaintiffs' claims on the ground that the acreage was not insurable due to the alleged failure to comply with the Special Provisions— specifically, the failure to survey and construct levees immediately after seeding and the failure to immediately fully install levee gates following seeding.

Plaintiffs disagreed with RCIS's interpretation of the Special Provisions, and the parties entered into policy-mandated arbitration pursuant to RMA Manager's Bulletin No. MGR-12-003.1 and Section 20(a) of the Basic Provisions. The arbitration proceedings have been consolidated and are being held in abeyance pending the resolution of the issue presented in this action.

Section 20 of the Basic Provisions provides for mandatory arbitration of disputes involving determinations made by an AIP. Specifically, Section 20(a) provides:

> [I]f you and we fail to agree on any determination made by us . . . , the disagreement may be resolved through mediation in accordance with Section 20(g). If resolution cannot be reached through mediation, or if you and we do not agree to mediation, the disagreement must be resolved through arbitration in accordance with the rules of the American Arbitration Association (AAA) . . .
>
> (1) All disputes involving determinations made by us . . . are subject to mediation or arbitration. However, if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, either you or we must obtain an interpretation from FCIC in accordance with 7 CFR part 400, subpart X or such other procedures as established by FCIC.
>
> > (i) Any interpretation by FCIC will be binding in any mediation or arbitration.
> >
> > (ii) Failure to obtain any required interpretation from FCIC will result in nullification of any agreement or award.
> >
> > (iii) Any interpretation by FCIC of a policy provision is considered a determination that is a matter of general applicability.
> >
> > (iv) Any interpretation by FCIC of a procedure may be appealed to the National Appeals Division in accordance with 7 CFR part 11.

(AR 107-08).

In accordance with this provision, RCIS and Plaintiffs jointly sought an interpretation of the Special Provisions from FCIC. (AR 3-7). The joint request stated that the parties sought an interpretation "in accordance with Bulletin MGR-05-018." (AR 3). Manager's Bulletin MGR-05-018 provides rules and procedures by which parties can obtain an interpretation from FCIC, as

required by Section 20(a), of "procedure"; it does not expressly discuss how to obtain an interpretation of a "policy provision." (AR 118-24).

In the request for interpretation, RCIS asserted that the provision of the Special Provisions at issue should be interpreted to require that "a producer must, no later than immediately following seeding of the fields, construct the entire levee system for all of the fields including preparation and installation of levee gates throughout all fields." (AR 6). Plaintiffs asserted that the provision should be interpreted to "only require that such levees, levee gates, and irrigation pumps as are required to enable the producer to put sufficient water on the field in the event it is needed for the purposes of germination or the elimination of soil crusting be in place immediately following seeding." (AR 6).

On December 17, 2014, RMA issued FCIC's interpretation of the Special Provisions, in which it adopted RCIS's interpretation (the "FCIC Interpretation"). (AR 9-13). It stated:

> FCIC agrees with [RCIS's] interpretation. FCIC does not agree with [Plaintiffs'] interpretation. Any time a term is not defined in the policy, its common meaning is used and that is found in any standard dictionary. The Merriam-Webster dictionary defines "immediately" as "without any delay." This means the listed activities must occur right after planting has ended, weather permitting, without any delay. If weather prevents these activities, they must commence as soon as the weather permits.
>
> Therefore, FCIC does not agree with [Plaintiffs'] interpretation that the Special Provisions only require that such levees, levee gates, and irrigation pumps as are required to enable the producer to put sufficient water on the field in the event it is needed for purposes of germination or the elimination of soil crusting, be in place immediately following seeding. FCIC also does not agree that interior levees do not have to be installed immediately following planting in order for the acreage to be insurable.
>
> The Special Provisions statement specifies what activities must occur immediately following seeding, including:
> 1. levees are surveyed and constructed;
> 2. levee gates are installed and butted; and
> 3. the irrigation pump is operable, ready to be started in the event sufficient rainfall has not been received, and turned on to provide sufficient water

for the purpose of germination or elimination of soil crusting.

These are specific activities that must occur on the insurable acreage each year. These are not requirements that only need to occur if the situation arises that requires the irrigation. The requirement is to conduct these activities immediately after planting and are [sic] not governed by the requirement that the producer follow good farming practice. This is a condition of insurability, not an issue of whether the producer followed good farming practices.

In accordance with section 20(a) of the Common Crop Insurance Basic Provisions, this FCIC interpretation is binding in any mediation or arbitration. Any appeal of this interpretation must be in accordance with 7 C.F.R. part 11.

(AR 12-13).

Following receipt of the FCIC Interpretation, Plaintiffs sought an administrative review of the FCIC Interpretation pursuant to 7 C.F.R. § 400.93, asserting that FCIC lacked the authority to issue an interpretation of a provision of the Special Provisions. (AR 15). They noted that the interpretation was purportedly issued under the authority provided in MGR-05-018, which by its terms applies to "an interpretation of procedure (i.e., procedural handbooks or manuals, or memoranda or bulletins that contain procedures)." (AR 15-16, 120). Plaintiffs argued that nothing in Bulletin No. MGR-05-018 authorizes FCIC to issue what purports to be a binding interpretation of a policy provision. (AR 15). RMA issued a decision (the "RMA Determination") affirming the FCIC Interpretation. (AR 24-25). RMA found that under Section 20(a)(1)(i) of the Basic Provisions, FCIC is required to give an interpretation of a policy provision, and that although nothing in MGR-05-018 expressly states that it applies to policy provisions, "there is nothing to legally preclude RMA from using the process contained therein to provide an interpretation . . . required by the policy." (AR 25). RMA emphasized that legally, it was required to provide an interpretation, and the form of that interpretation does not override the substance of the requirement to issue the interpretation. (*Id.*). It noted that the interpretation could be in any form and that a reference to MGR-05-018 was immaterial. (*Id.*) It also stated that it has previously

interpreted pilot policy provisions using MGR-05-018 because no procedures exist for interpretation of such provisions. (*Id.*).

On February 5, 2015, Plaintiffs appealed the FCIC Interpretation and the RMA Determination to the National Appeals Division ("NAD") of USDA. (AR 28-38). By letter dated March 12, 2015, NAD issued its determination, finding that the RMA Determination was a matter of general applicability and, therefore, was not appealable. (AR 54-56). Plaintiffs have exhausted their administrative remedies.

On July 10, 2015, Plaintiffs filed their Complaint for Review of Agency Action, Declaratory Judgment, and Other Relief under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* (the "APA"). (Doc. 1). Plaintiffs brought two claims for declaratory judgment, both under the APA. The first claim asserted that under principles of contract law, the FCIC Interpretation of the Special Provisions was arbitrary, capricious, and contrary to law. The second claim asserted that the FCIC Interpretation and the RMA Determination were arbitrary, capricious, contrary to law, and in excess of statutory authority, because FCIC lacked the statutory authority to issue a binding interpretation of the Special Provisions.  In their Prayer for Relief, Plaintiffs seek the following:

    (a) [a declaration] that [the FCIC Interpretation stating] that the entire levee system must be in place immediately following seeding was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; was in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; was without observance of procedure required by law; and was unwarranted by the facts, in violation of 5 U.S.C. § 706;

    (b) [a declaration that] Plaintiffs' rice acreage satisfied the requirements for insurability under the Special Provisions if such levees, levee gates, and irrigation pumps as are required to enable the producer to put sufficient water on the field in the event it is needed for the purposes of germination or the elimination of soil crusting be in place immediately following seeding;

    (c) [a declaration that FCIC and RMA] lacked the statutory authority to issue a binding interpretation of the Special Provisions under Federal law and that the FCIC [Interpretation] and [RMA Determination] be set aside as [they] were in excess of the

statutory authority given to Defendants;

    (d) [a declaration] that the FCIC Interpretation is not binding on the arbitrator in the pending arbitration as the Agency Defendants lacked the authority to issue a binding interpretation of the Special Provisions; []

    (e) [t]hat the Court remand this case to Defendants with instructions that Defendants take such further action as is consistent with the ruling and judgment of this Court; [and]

    (f) [attorney's fees and costs].

(Compl. at 10-11).

On June 20, 2016, Plaintiffs and Defendants filed cross-motions for summary judgment on Plaintiffs' claims. On January 17, 2017, the Court held a hearing on the motions.

## II.    LEGAL STANDARD FOR SUMMARY JUDGMENT

The Court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties agree that in an administrative record review case such as this, no disputed facts exist for the Court to resolve; instead, "[t]he Court reviews only the administrative record." *Von Eye v. United States*, 887 F. Supp. 1287, 1290-91 (D. S.D. 1995)

## III.    DISCUSSION

There are two principal issues presented by the parties' cross-motions for summary judgment: (A) whether the FCIC Interpretation should be set aside because the FCIC Interpretation is erroneous; and (B) whether the FCIC Interpretation and the RMA Determination should be set aside because FCIC lacked the authority to issue a binding interpretation of the Special Provisions. The Court will address each in turn.

### A.  Whether the FCIC Interpretation Should Be Set Aside Because It Is Erroneous

With respect to this issue, the parties' first dispute is over the appropriate scope of this Court's review of the FCIC Interpretation of the Special Provisions. Once the scope of review is determined, the Court will address whether the FCIC Interpretation should be set aside.

###### 1.  The Scope of Review

The parties agree that the Court's scope of review is defined generally by 5 U.S.C. § 706, which states in relevant part that "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action," and shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." The parties disagree about how to apply this statute in the present case.

Plaintiffs argue that the interpretation of the Special Provisions is a question of law that the Court should review de novo. They point out that Section 706 explicitly directs courts to "decide all relevant questions of law" and to set aside agency action that is "not in accordance with law." They also emphasize that the Eighth Circuit has held that an administrative officer's conclusions of law are reviewed de novo. *See Syverson v. USDA*, 601 F.3d 793, 799 (8th Cir. 2010). They further note that the Eighth Circuit has previously held (outside the context of the APA, in a case involving a coverage dispute) that the proper construction of an FCIC crop insurance policy is a question of law. *See Kroeplin Farms Gen. P'ship v. Heartland Crop Ins., Inc.*, 430 F.3d 906, 909 (8th Cir. 2005) ("The proper construction of an insurance contract is an issue of law . . .").

Defendants do not disagree that the interpretation of the Special Provisions involves a question of law. However, they argue that rather than applying de novo review, this Court should afford the same "substantial deference" to the FCIC Interpretation that is generally afforded to agency interpretations of statutes and regulations. In *Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the Supreme Court held that where a court reviews "an agency's construction of the statute which it administers" in a situation in which Congress has

not directly addressed the precise question at issue, the "court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* at 842, 844. Instead, the court conducts a deferential review, wherein "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. The Supreme Court noted in its opinion that "policy arguments are more properly addressed to legislators or administrators, not to judges." *Id.* at 864. The Supreme Court subsequently extended the *Chevron* rule of substantial deference to cases involving a court's review of an agency's interpretation of its own regulations. *See Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994). ("We must give substantial deference to an agency's interpretation of its own regulations."). In such cases, "the agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Id.* (internal quotation marks omitted). The Court noted that "[t]his broad deference is all the more warranted when . . . the regulation concerns a complex and highly technical regulatory program, in which the identification and classification of relevant criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns." *Id.* (citation and internal quotation marks omitted).

Significantly, the FCIC Interpretation at issue here did *not* involve either an agency's interpretation of a statute or an agency's interpretation of its own regulations. Although the Basic Provisions and the Rice Crop provisions are codified in regulations, the Special Provisions are not. Defendants argue that the FCIC Interpretation of the Special Provisions is nonetheless entitled to *Chevron*-style substantial deference, because the Special Provisions are akin to regulations with the force of law. They note that codified regulations make the Special Provisions a required component of the Federal crop insurance policy; that regulations provide that the Special

Provisions may not be waived or varied in any way; and that regulations provide that in the event of a conflict, the Special Provisions must control over other policy provisions that *are* codified in the Code of Federal Regulations. Defendants also emphasize that the Special Provisions are part of the complex, highly technical program of Federal crop insurance and that the FCIC Interpretation involved a matter within the agency's specific expertise.

The Eighth Circuit has previously extended substantial deference to contexts other than agency interpretations of statutes and regulations. In *Rain & Hail Insurance Service, Inc. v. Federal Crop Insurance Corp.*, the USDA's Board of Contract Appeals ("AGBCA") issued an interpretation of a Manager's Bulletin issued by FCIC, and an insurer challenged that interpretation. 426 F.3d 976, 978-79 (8th Cir. 2005). The court began by noting that it needed to decide what deference was owed to the agency's construction of the Manager's Bulletin. *Id.* at 979. The court acknowledged that the Manager's Bulletin was not a regulation and did not otherwise carry the force of law, noting that it was not the product of a formal adjudication or notice-and-comment rulemaking, and that the FCIA gives no indication that Congress meant to delegate authority to the FCIC to issue Bulletins with the force of law. *Id.* Nevertheless, it found that deference was appropriate, stating:

> [W]e think that the reasons for deferring to an agency's interpretation of its regulations apply equally to the AGBCA's interpretation of the Manager's Bulletin: Because the AGBCA possesses a "unique expertise" in the "complex . . . circumstances" of reinsuring MPCI policies, "we presume that the power authoritatively to interpret" such FCIC pronouncements as the Manager's Bulletin "is a component of the [AGBCA's] delegated lawmaking powers." *See Martin v. Occupational Safety & Health Rev. Comm'n*, 499 U.S. 144, 151, 111 S. Ct. 1171, 113 L. Ed.2 2d 117 (1991).

*Id.* at 979. The court then stated that it would "defer to the AGBCA's interpretation unless plainly erroneous." *Id.*

The Eighth Circuit reached a similar conclusion in *Clason v. Johanns*, 438 F.3d 868 (8th

Cir. 2006). In *Clason*, the National Appeals Division of the USDA issued a decision that involved an interpretation of a term in the "CCC-681-1 form," a form created by a corporation within the agency that addressed the terms under which agricultural loans could be discharged. *Id.* at 870-71. In an action brought under the APA challenging the decision, the court held that it should afford the agency interpretation "the same level of deference afforded to an agency's interpretation of its own regulations." *Id.* at 871 (citing *Rain & Hail*, 426 F.3d at 979). It reasoned in part that regulations authorized the CCC (a federal corporation within the USDA) to set the terms and conditions of the CCC-681-1 form, and that "[t]he terms of CCC-681-1 involve complex matters within the Department of Agriculture's area of expertise, namely, the repayment terms of subsidized agricultural commodity loans." *Id.*

Similarly, numerous courts have found that an agency's interpretation of a contract is entitled to deference when the interpretation implicates the agency's expertise. *See Muratore v. U.S. Office of Pers. Mgmt.*, 222 F.3d 918, 921-23 (11th Cir. 2000) (stating, "Most courts have deferred to an agency's interpretation [of a contract] by applying the arbitrary and capricious standard of review"; finding that the Office of Personnel Management's interpretation of a health benefits contract was entitled to deference because OPM negotiates the contracts at issue; because, pursuant to the FEHBA, OPM routinely interprets plans to determine an insurance carrier's liability; because Congress has given OPM broad authority to regulate the field in which OPM negotiates the insurance contracts; and because OPM has the ability to take a broad, national view when it interprets plans which serves the function of ensuring consistent, nationwide application); *United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, 103 F. Supp. 3d 1121, 1129 (N.D. Cal. 2015) (collecting cases and stating, "several courts have held that, where an agency's action is being challenged pursuant to the APA, and where the agency has interpreted a contract,

that interpretation is entitled to deference and the arbitrary-and-capricious standard applies—at least where the agency's expertise or statutory domain is implicated"; noting that cases applying de novo review "appear to be much fewer in number"). *Cf. Sternberg v. Sec'y, Dep't of Health & Human Servs.*, 299 F.3d 1201, 1205 (10th Cir. 2002) (stating, "[t]his circuit has adopted the view that under the principles of [*Chevron*], an agency's interpretation of a contract is reviewed under the arbitrary and capricious standard when the subject matter of the contract involves the agency's specialized expertise"; declining to afford deference to the Department of Health and Human Service's interpretation of a sentencing agreement, because the agreement did not involve HHS-specialized expertise, did not deal with arcane subject matter, did not contain specialized terminology, and was not the sort of agreement normally reviewed by the agency).

Plaintiffs acknowledge that in some cases, agency interpretations of non-codified language have been accorded substantial deference. However, Plaintiffs urge the Court to follow the approach articulated by the Eastern District of North Carolina in *Harrell & Owens Farm v. Federal Crop Insurance Corp.*, in which the court found that substantial deference is appropriate when an agency's interpretation "turns on reference to rules and regulatory provisions, is made pursuant to a comprehensive statutory scheme, and is based on policymaking prerogatives and subject-specific expertise," but that "where the agency's determination was made simply by reference to general common law principles governing contracts, no such deference is given." No. 4:09-CV-217-FL, 2010 WL 9462574, at *7 (E.D.N.C. Oct. 6, 2010). Plaintiffs argue that here, the text of the FCIC Interpretation shows that the interpretation was made simply by reference to general common-law principles governing contracts. They argue that therefore the FCIC Interpretation is not entitled to deference and should be reviewed de novo.

After careful consideration of the above cases and the circumstances here, the Court finds

that the FCIC Interpretation is entitled to substantial deference. Like the interpretations in *Rain & Hail* and *Clason*, the interpretation at issue here did not involve the product of a formal adjudication or notice-and-comment rulemaking. However, as in both of those cases, the interpretation at issue fell squarely within the agency's specific area of expertise—here, the circumstances under which particular acreage is insurable under the Federal crop insurance program. In addition, although the Special Provisions are not codified, the regulations indicate that the Special Provisions have the same (or more) force as those provisions that are codified. By regulation, the Special Provisions (like the codified provisions) "may not be waived or varied in any way . . . ." *See* 7 C.F.R. § 457.8. Moreover, the regulations provide that in the event of a conflict, the Special Provisions are controlling over the provisions that *are* codified (the Basic Provisions and Crop Provisions). *See* 7 C.F.R. § 457.8, at "AGREEMENT TO INSURE" ("If a conflict exists among the policy provisions, the order of priority is: (1) The Catastrophic Risk Protection Endorsement, as applicable; (2) the Special Provisions; (3) the Commodity Exchange Price Provisions, as applicable; (4) the Crop Provisions; and (5) these Basic Provisions, with (1) controlling (2), etc.") (AR 77). It appears to be undisputed that an agency interpretation of the Basic Provisions or Crop Provisions would be subject to substantial deference. It would be illogical to accord deference to the agency's interpretation of those policy provisions, yet not afford the same deference to other provisions in the policy that, legally, are controlling over the codified provisions. The Court also finds it significant that the FCIC Interpretation under review here is specifically authorized and mandated by regulation. *See* 20 C.F.R. § 457.8, 20(a)(1) (providing that in the event of a dispute about the meaning of any policy provision (which includes the Special Provisions), the parties "must obtain an interpretation from FCIC" and that the FCIC's interpretation "will be binding in any mediation or arbitration"). (AR 108).

The Court acknowledges that the FCIC Interpretation does not contain a detailed explanation of the agency's reasoning and appears to rely at least in part on the common-law principle of assigning words their plain-language dictionary definitions. However, the FCIC Interpretation also appears to be drawing from the agency's area of expertise when it distinguishes between requirements of "good farming practices" and requirements of "insurability." The Court declines to take a narrow approach to the scope of review question that focuses solely on the reasons expressly articulated in the agency decision while ignoring other factors that favor deferential review. Such an approach is not consistent with the Eighth Circuit's decisions in *Rain & Hail* and *Clason*, in which the Eighth Circuit considered other factors to be most relevant. After consideration of all of the relevant factors, the Court finds that substantial deference is appropriate here.

In sum, in light of the fact that the subject matter of the FCIC Interpretation falls squarely within the agency's area of expertise, the role that the Special Provisions play as controlling over codified provisions in the policy, and the fact that FCIC is specifically authorized by regulation to issue an interpretation of the Special Provisions, the Court finds that FCIC's interpretation of the Special Provisions is entitled to the same level of deference as an agency interpretation of its own regulations. Thus, the Court will give controlling weight to the FCIC Interpretation unless it is plainly erroneous or is inconsistent with the regulations or the language of the Special Provisions.

### 2. The FCIC Interpretation

The Court next turns to the question of whether the FCIC Interpretation is plainly erroneous or inconsistent with regulations or with the language of the Special Provisions. The provision that is the subject of the FCIC Interpretation reads as follows:

Insurance Availability
. . .

In addition to the definition of Planted Acreage specified in section 1 of the Crop Provisions, the following must have occurred immediately following seeding. If these activities have not occurred, the acreage will be considered "acreage seeded in any other manner" and will not be insurable:

1. levees are surveyed and constructed;
2. levee gates are installed and butted; and
3. the irrigation pump is operable, ready to be started in the event sufficient rainfall has not been received, and turned on to provide sufficient water for the purposes of germination or elimination of soil crusting.

(AR 59).

As discussed above, FCIC agreed with RCIS's position and interpreted the above provision to mean that "a producer must, no later than immediately following seeding of the fields, construct the entire levee system for all of the fields including preparation and installation of levee gates throughout all fields." (AR 6). FCIC rejected Plaintiffs' assertion that this provision should be interpreted to "only require that such levees, levee gates, and irrigation pumps as are required to enable the producer to put sufficient water on the field in the event it is needed for the purposes of germination or the elimination of soil crusting be in place immediately following seeding." (*Id.*) FCIC stated, in relevant part:

FCIC agrees with [RCIS's] interpretation. FCIC does not agree with [Plaintiffs'] interpretation. Any time a term is not defined in the policy, its common meaning is used and that is found in any standard dictionary. The Merriam-Webster dictionary defines "immediately" as "without any delay." This means the listed activities must occur right after planting has ended, weather permitting, without any delay. If weather prevents these activities, they must commence as soon as the weather permits.

Therefore, FCIC does not agree with [Plaintiffs'] interpretation that the Special Provisions only require that such levees, levee gates, and irrigation pumps as are required to enable the producer to put sufficient water on the field in the event it is needed for purposes of germination or the elimination of soil crusting, be in place immediately following seeding. FCIC also does not agree that interior levees do not have to be installed immediately following planting in order for the acreage to be insurable.

The Special Provisions statement specifies what activities must occur immediately following seeding, including:

- 16 -

1. levees are surveyed and constructed;
2. levee gates are installed and butted; and
3. the irrigation pump is operable, ready to be started in the event sufficient rainfall has not been received, and turned on to provide sufficient water for the purpose of germination or elimination of soil crusting.

These are specific activities that must occur on the insurable acreage each year. These are not requirements that only need to occur if the situation arises that requires the irrigation. The requirement is to conduct these activities immediately after planting and are [sic] not governed by the requirement that the producer follow good farming practice. This is a condition of insurability, not an issue of whether the producer followed good farming practices.

(AR 12).

Plaintiffs argue that this Court should evaluate the FCIC Interpretation based on principles of Missouri contract law. Defendants contend that contract law is inapplicable, but do not specify what specific framework that the Court should apply to determine whether the agency's decision concerning interpretation of the Special Provisions was plainly erroneous. The Court will assume, without deciding, that Missouri contract law applies to this dispute, as Plaintiffs contend. Under Missouri law, if the language of an insurance policy is "reasonably open to different constructions," then the language is ambiguous. *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. 2010) (internal quotation marks omitted). When an ambiguity exists in an insurance policy, the court must interpret the policy in favor of the insured. *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. 2007). If, however, the policy is unambiguous, the court must enforce the contract's terms as written. *Id.*

The Court finds that the FCIC Interpretation is not plainly erroneous and is not inconsistent with the regulations or with the language of the Special Provisions. The policy language states, without qualification, that several activities must have occurred immediately following seeding, including that "levees are surveyed and constructed" and that "levee gates are installed and butted."

(AR 59). In the absence of any qualifying language in those clauses of the policy, the logical reading of this provision is that "levees" unambiguously means "all levees," rather than some unspecified subset of levees. It was not plainly erroneous for FCIC to determine that RCIS's interpretation reflected the plain and unambiguous meaning of this language. It was entirely reasonable for FCIC to reject Plaintiffs' suggested interpretation, which would have required FCIC to insert several very specific qualifications into the Special Provision that simply are not present in the policy language. For example, to accept Plaintiffs' interpretation, FCIC would have had to find that by "levees," the Special Provisions meant "such levees as are required to enable the producer to put sufficient water on the field in the event it is needed for the purposes of germination or the elimination of soil crusting be in place immediately following seeding." Given the absence of such qualifying language to describe the "levees" and "levee gates" that were required, it was not plainly erroneous for FCIC to find that the Special Provisions, as written, were not open to the interpretation offered by Plaintiffs.

Plaintiffs offer several arguments in favor of their preferred interpretation: that evidence in the record suggests that the Special Provisions were put in place to address a situation wherein some producers had planted rice without installing a field levee that would give them the option to water the crop for germination (AR 593, 597); that under the FCIC Interpretation, a farmer who decided later in the season to add additional levees or gates to a field to prevent losses would be unable to do so without rendering the field uninsurable; and that the FCIC Interpretation places farmers in a Catch-22 situation, because under some circumstances delaying levee or gate installation constitutes a good farming practice, and another policy provision states that losses caused by a failure to follow good farming practices are not covered. These arguments might be relevant if the Special Provisions were ambiguous and the Court were deciding between two

reasonable constructions.[1] However, none of these arguments persuade the Court that FCIC plainly erred by finding that the plain language of the Special Provisions unambiguously required all levees and levee gates to be constructed immediately following seeding.

Plaintiffs also argue that a 2013 email in the Administrative Record from Rebecca Davis at RMA discussing post-2012 changes to the Special Provisions supports their interpretation. The email states, in relevant part:

> The changes are that the term "immediately following seeding" was removed. Even though the rice production handbooks all have this provision, under certain circumstances, it can be considered a good farming practice to delay the construction of levees. The statement was intended to ensure that losses were not paid if producers did not have the means to "flush" the acres in order to obtain an adequate stand. The modified provision clarifies this point. . . .

> The current special provision statement in Missouri has been in place since 1998 and is a reiteration of the information published in the rice production handbooks defining good farming practices. It was initially put in place to address program integrity concerns with poor insurance experience caused by failure to get an adequate stand of rice. Since the statement was implemented in 1998, insurance experience has greatly improved. . . .

> The changes provide more flexibility to producers by acknowledging that a "flush" may not always be needed after planting to establish an adequate stand and there are production practice differences between zero grade fields and contour fields. Under certain conditions, this allows the producer more time to implement the necessary requirements to Flood Irrigate their rice crop. The modified provision meets the needs of RMA by preserving the integrity concerns of previous years, while also acknowledging current rice production practices, so these provisions do not prohibit producers from caring for their crop. . . .

(AR 597). Plaintiffs argue that Ms. Davis's statement that the modified provision "clarifies" the requirements of the policy constitutes an admission by RMA that Plaintiffs' interpretation is correct. The Court disagrees. First, Plaintiffs cite no authority to suggest that the specific wording

---

[1] The Court also notes that because these arguments concern what constitutes good rice farming practices and the history and purpose of the Special Provisions, the agency is in a much better position to evaluate these arguments than is this Court.

of an email written by a single RMA employee, outside the context of any administrative decision-making process, should be entitled to any weight in evaluating a formal agency determination. Moreover, read as a whole, Ms. Davis's email indicates that the post-2012 removal of the "immediately following seeding" language caused a substantive change to the meaning of the policy. Ms. Davis states that "the changes provide more flexibility to producers," suggesting that producers covered after the change have more flexibility than those covered prior to the change. If anything, this supports Defendants' position that the Special Provisions at issue here did not provide this flexibility to producers because they required construction of the entire levee system immediately following seeding.

In sum, the Court finds that the FCIC Interpretation was not plainly erroneous or contrary to regulation or the language of the Special Provisions. Therefore, Defendants' motion for summary judgment will be granted, and Plaintiffs' motion will be denied.

**B**.     **Whether the RMA Determination Should Be Set Aside on the Ground That FCIC Lacked the Authority to Issue a Binding Interpretation of the Special Provisions**

Plaintiffs' second contention is that the RMA Determination (RMA's finding that FCIC had the authority to issue a binding interpretation of the Special Provisions) should be set aside because Defendants lacked the authority to issue a binding interpretation of the Special Provisions.

The Court will review the RMA Determination using the substantial deference standard.[2] The RMA Determination appears to have been primarily an interpretation of Section 20(a)(1) of the Basic Provisions, which is codified in regulations, and an agency's interpretation of its own regulation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation. *See Thomas Jefferson Univ.*, 512 U.S. at 512. Moreover, to the extent that the RMA

_____

[2] Plaintiffs do not appear to dispute the appropriateness of this standard.

Determination involved an interpretation of a Manager's Bulletin, the Eighth Circuit has held that an agency's interpretation of a Manager's Bulletin is also entitled to substantial deference and will be set aside only if plainly erroneous. *See Rain & Hail*, 426 F.3d at 980.

Plaintiffs assert that RMA's finding that Section 20(a)(1) of the Basic Provisions requires FCIC to give an interpretation of a policy provision and permits it to do so through the process established in MGR-05-018 is contrary to the plain language of both Section 20(a)(1) and Manager's Bulletin, MGR-05-018. Section 20(a)(1) provides, in relevant part:

> All disputes involving determinations made by us . . . are subject to mediation or arbitration. However, if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, either you or we must obtain an interpretation from FCIC in accordance with 7 CFR part 400, subpart X or such other procedures as established by FCIC.

(AR 107). Plaintiffs argue that this plain language only requires an interpretation from FCIC when such an interpretation is either in accordance with "7 C.F.R. Part 400, subpart X"[3] or with "such other procedures as established by FCIC." Plaintiffs further argue that FCIC has not established any procedures for interpretations of the Special Provisions, and therefore Section 20(a)(1) does not require an interpretation from FCIC. Plaintiffs point out that although Defendants purported to issue the FCIC Interpretation pursuant to a Manager's Bulletin (MGR-05-018), that Bulletin, by its express terms, establishes a procedure for obtaining an "interpretation of procedures used to settle disputes" (AR 118), not a procedure for obtaining interpretations of policy provisions.

Plaintiffs' argument is without merit. Section 20(a)(1) plainly requires that "if the dispute in any way involves . . . the meaning of any policy provision or procedure, either you or we **must obtain an interpretation from FCIC** . . . ." 7 C.F.R. § 457.8, at 20(a)(1) (emphasis added). (AR

---

[3] The parties appear to agree that 7 C.F.R. Part 400, subpart X is not applicable to the present case.

108). It also states, "[a]ny interpretation by FCIC will be binding in any mediation or arbitration." (*Id.*) The Special Provisions are plainly "policy provision[s]" to which the obligation to obtain a binding arbitration from FCIC applies. The regulation contains no qualifying language to suggest that the obligation to obtain an interpretation from FCIC, or the binding nature of that interpretation, is limited to situations in which FCIC has issued any particular type of procedures for issuing the interpretation. Moreover, Defendants point to nothing in Section 20(a)(1) or elsewhere that requires FCIC to establish a procedure for issuing such interpretations with any particular level of formality or specificity. Apparently, FCIC's current "procedure" for making interpretations of Special Provisions is the procedure outlined in Manager's Bulletin MGR-05-018.

Plaintiffs appear to believe that because the Manager's Bulletin itself does not authorize the issuance of an interpretation of a policy provision, FCIC lacked the authority to issue such an interpretation. However, the authority and requirement for FCIC to issue a binding interpretation of a policy provision does not come from the Manager's Bulletin, but from Section 20(a)(1), which is codified as a regulation. The Manager's Bulletin simply provides one possible procedure FCIC may use to carry out that obligation.

In sum, RMA reasonably determined that the regulations provide that FCIC has the obligation and authority to issue a binding interpretation of the Special Provisions. That determination was not plainly erroneous or contrary to any regulation. Thus, the Court finds that neither the FCIC Interpretation nor the RMA Determination should be vacated on this ground. Defendants' motion for summary judgment on Plaintiffs' request to vacate the FCIC Interpretation and RMA Determination will be granted, and Plaintiffs' motion will be denied.

## IV. CONCLUSION

For all of the above reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 35) is

**DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 38)

is **GRANTED**.

A separate judgment will accompany this Memorandum and Order.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 24th day of March, 2017.